May it please the Court, William Kopenny for the appellant, Conrad Krouse. Your Honors, this is an unusual case for me because we have four arguments, two of which are questions of first impression, a third one of which the government says, I think, accusingly, that we've raised a novel issue, and a fourth one which is very fact-bound, and in each case I think the government, with the exception of the sufficiency or the question of interpreting 924C, the government believes that we've not going to be able to address, I mean, I could address any one of these issues for 20 minutes, and I don't know why the Court decided to award oral argument in this case, but I'd like to start with the 924C issue unless the Court wants to direct my comments to one of the other issues. The, as far as I could tell based on my looking again last night, this Court hasn't interpreted the new language in 924C that adds a 10-year mandatory consecutive sentence for possession of a firearm in furtherance of a drug trafficking crime. And this case, from the appellant's point of view, has some unique facts that will – would give the Court an opportunity to really set out some contours of what Congress meant, how much weight to put on the language in furtherance of. In most of the cases, and the government cites out-of-circuit cases which we cite and analyze, too, and although I could try to answer questions about any of those cases, I think that the question really is one of policy and one of interpretation. What we have here is a passive drug trafficking crime, and by that I mean we don't have a drug deal where a person brought a gun to the drug deal in a car or even set a drug deal in his house in a certain room and had guns planted around the room in case something went wrong during the deal. What we have is the crime of possessing with intent to distribute something in a place where the defendant wasn't physically present at the time that the crime was proven to have been committed. That is, when the drugs were found in that room. The defendant wasn't in the room. The guns were in the room, though. And the question is – I mean, one way of looking at the question here is, does in furtherance of require proof other than the possibility that had someone been in the room and tried to rob the defendant of the drugs, or had there been a drug deal in the room at some other time, that the gun was there for the purpose of protecting the drugs or for use by the defendant? Well, at some point, can't a reasonable fact finder make some common sense inferences when you're dealing with a distributable quantity of drugs, cash, other paraphernalia, evidencing that this room is being used for the storage and perhaps also for the distribution of drugs, that firearms that are readily accessible in that same room have as their purpose the protection of those types of illicit activities? That doesn't seem to me to be much of a stretch. Your Honor, the trouble with – I don't think that's a stretch. An expert witness, a purported expert, said what Your Honor just said, and I with respect doubt that you're qualified as an expert in terms of your law enforcement background, which I don't know anything about. But it seems to me that anyone could say that when people have loaded guns in the same room where they keep drugs, that they could be used to protect the drugs in the event that certain things occur. And the question is, is that what Congress meant by possessing a gun in furtherance of a static crime, of a passive crime? All the cases that I'm aware of and all the cases that we've analyzed from the other circuits are cases more like a gun that's put in a car where the defendant is driving to a drug deal. Now, I can see why a reasonable fact finder could conclude that that gun is there, although it's not physically on the person of the defendant who is engaged in that drug trafficking crime, but that gun is being constructively possessed to further the drug deal, because something might go wrong at that moment. But the drug deal is what's being proven in the trial. In our case, what's being proven is that a person was sort of in possession of something in a location. It's being proven at a certain time. And there's no way that there's evidence to prove that. The problem I have is we've got five loaded firearms here. I mean, it's almost as if the guy had a gun rack, you know, with sawed-off shotguns, machine guns, automatic pistols. What do we have to have before a reasonable fact finder could say the presence of these weapons is all part and parcel of the drug distribution? You Honor, it's clear that it would be a reasonable inference to think that if this man made a deal to sell drugs, that he might take one or more of those guns with him to the meeting for the exchange. That's a reasonable inference here. But that isn't really what the defendant was charged with. He was charged with possessing these guns to further the crime of statically possessing this catch of drugs with the intent to at a later time distribute it. And the government really didn't show how these – the presence of these guns in that bedroom furthered that crime. In other words, we don't have – there's no – what is the word?  We don't have any real – thank you very much. I know it's in my briefs. There's no real nexus between the defendant and the guns or the defendant and the drugs that would support the infertile and sub element. Sure, he has a collection of guns in the room, and he might have had a collection of bow and arrows in the room as well. But the question is, does the government have the burden of proving something specific about the drug transaction which is involved, the drug trafficking crime, and how the guns would further it, not just some hypothetical? Because really what we have here is an expert who testified to a hypothetical. He said something like, well, often drug dealers keep guns because in the event someone tries to steal their drugs, they'll be at hand. Well, we certainly see a lot of cases that come to us where drug dealers are arrested with weapons nearby, either on their persons, in the car, in the same case. And it seems to me that when Congress broadened the statute, and I think it did, it did so to get away from some of the court decisions which had required some sort of active use. Actually, Your Honor, if I may interrupt, and I don't mean to touch on this, but I think Congress did broaden the statute, but they changed, I think, the old Bailey test of active employment. Right. In other words, active employment means the gun has to have actually been used. Branded or carried or something. But Congress didn't really change the element of in furtherance of. They said, okay, you don't have to actually physically possess this gun. You don't have to be using it in a drug transaction, as long as the presence of the gun which you possess constructively. I think the way they did was expand the nature of possession. Let's make an absurd hypothetical. Let's suppose that the police had found in a gun case an automatic weapon of some sort that's illegal to possess with. In a gun case, did you say? A gun case, yeah, a glass gun case. Right. With a note on the glass that said break in case of raid. Would you agree with me that that would be the possession of a weapon in furtherance of a drug distribution scheme, assuming that they found all the other paraphernalia and drugs that they found in the gun case? Assuming that the drugs were there and there was a note saying use this gun in the event of a raid? Absolutely. Break glass in case of raid. Well, Your Honor, I think that would be closer to the in furtherance of element being proven. What we have here, and the reason I would distinguish your example, which I don't think is all that absurd, to be honest, and which I think I see a lot of MAC-10 machine guns and automatic weapons, Uzis. I don't even know all the various that these drug dealers carry with them. And they certainly are not doing it to go after grouse in the wheat field. Your Honor, I think if I were the government, I would be arguing that it has been acknowledged by federal courts throughout the land that drugs and guns are just a terrible combination. And that whenever there are guns present, the crimes are worse. But we're not. I mean, that's true. And wasn't Congress acting in response to all the cases that it is seeing in the courts and declaring that we want to enhance the punishment for drug dealers who are caught with firearms? I have no doubt that Congress did respond to public sentiment about the dangers of guns and drug dealers. But what this Court has to do is not just ask what Congress's ultimate purpose was, but what language it used in creating the elements of this. And that's why I'm focusing on the language in furtherance of. It isn't a crime just to be a drug dealer who constructively possesses a gun. Well, when I say it isn't a crime, it may be, but it's not a violation of this statute. To simply be a person who is guilty of possessing drugs with intent to distribute and also to constructively possess a gun. The statute, and I think the government's interpretation would allow a conviction or actually creates a presumption that any time a person who is in possession of drugs for the intent to distribute, which is, again, a future event, the present crime is the possession. The intent to distribute is at some time in the future unless you're charged with a sale or a conspiracy. But in this case, it's possession with the future intent to distribute. This argument and this interpretation of this statute creates a presumption that if that person is also in possession of a gun, which is anywhere near the drugs, and of course, one of the – we have a seven-part or eight-part test from another circuit, and it says the place where the drugs were. And I don't know what that means. Does it mean in the same house? Does it mean in the same pocket? You know, I mean, there's a lot of ambiguity with that test, and this Court hasn't ever set forth a test. And what I'm asking the Court to do is to set the test in a way that doesn't create a presumption or shift the burden to the defense to prove that the guns were not in furtherance of. Because otherwise, what you have is you're writing off the language in furtherance of and presuming that any drug dealer – and this might be what the public does, and this may be what a lot of Congressmen did, too, and women did, and say, if a drug dealer has a gun, it's a dangerous situation. So let's increase the penalties. But that's not what the statute says. So I would urge the Court to focus on the in furtherance of and ask whether what we have here is any more than a hypothetical by an expert who says, well, it could have been used in the event something that wasn't proven to have happened here at some future time did happen, where someone came in and stole the drugs or something. And that would – and I think that the argument that the – the absurd question, and I'm using your own language in hyperbole, but this question of if there was a sign that says, in case someone tries to get my stash, shoot them with this gun, that would be a reasonable argument. If there's a gun, you know, I think that would be pretty clear evidence of the gun being there in furtherance of the static crime of possession. But in the absence of that, the government can field an expert or even a non-expert like me to say, gee, I think it's likely that if there's guns nearby – but, you know, the truth is that if you have a gun in your house, even though you're not intending to further anything in particular, someone breaks in and it's nearby, you might use it to defend against whatever that person does. Does that really meet the in furtherance element, or is there something more required? I have no idea if I have any time left, but is there any other question on another issue that the Court wishes me to address? Otherwise, I have a few other comments. Well, was your – on this – on this first stash, refresh my memory, was your client claiming that – that marijuana did not belong to him? He did. He said there were a couple of rap artists who were operating out of that house and that they were using that room, which was often locked, and that he wasn't responsible for any of the drugs. So his defense was, I wasn't committing the drug trafficking crime. And therefore, if that were true, of course, that would be the other – the third element, which we haven't talked about in 924, which is you have to possess the gun, it has to be in furtherance of, and then there has to be proof of the drug trafficking crime. His defense in this case was, I wasn't committing the drug trafficking crime. These rap guys must have been the possessors of the marijuana, the drugs in the room. So there wasn't – the issue of why the guns were there wasn't really very well developed, except by the presence of them and by the expert testimony from the government's witness. I would like to address briefly the Franks issue, because I think it's – it's interesting that the government is claiming waiver here. And I – I – Well, how about – how about when he was – his house was searched, when – when he was on pretrial detention? Sure. Your Honor, that's the third issue in our brief. Did you have a specific question, or did you just want me to address it briefly? Could I just talk? Okay. Our – the government admits this is a question of first impression, and that is, by what standard is a – is a search pursuant to a pretrial release search condition to be judged under the Fourth Amendment? And the government continues to rely on cases that interpret the reasonableness of searches of people who are on parole or probation, people who are convicted and are – it is – the Court has permitted to presume are guilty drug dealers. Our case is a case where there – as a condition of his liberty, pretrial, the defendant was told that you will submit your person and property. We discussed the ambiguous nature of the word property in the brief, but we – we have a situation where there's by no means a clearly voluntary relinquishment of Fourth Amendment rights. And that – that term of – that condition of pretrial release was then used to search the residence, which we view as the core – the core value of the Fourth Amendment. I'm sorry. Did you have a question? Well, I actually do, but I didn't want to – all right. Let me pose my question. With regard to that search – well, we've got two searches, right? One of them was conducted pursuant to a warrant, I guess, on January the 30th, and that's when they seized surveillance equipment. Your Honor, there was a first search, which was conducted to the warrant prior to the indictment, and this is the Franks issue search. Okay. The second one was after the defendant was arraigned, released on pretrial with this condition, and then additional drugs were found. Okay. Count 5 was based on this search. They were found in another place, weren't they? I'm sorry. They were found in the garage, I think, in the second search. But in Count 5, the defendant was charged with the possession of those drugs, and the jury deadlocked on Count 5, did not return a verdict of guilty. There were some votes for guilty, presumably on the basis of this evidence. So was all of that – the surveillance equipment, then, was that all relating to Count 5? Your Honor, you know, I don't know the answer to that question without reviewing the record. I can file a better brief in response, but I think it was found in the first search. On that second search, the pretrial detention search. Yes, sir. Are you arguing that there was a lack of probable cause or reasonable suspicion? Your Honor, no. There was reasonable suspicion. There was an arrest warrant for the defendant for violating the terms of pretrial release, but there was no right to search the house without a search warrant or pursuant to the condition, the pretrial condition. Well, the arrest warrant would have allowed them to go into the house. It wasn't arrested in his home. Right. Had he been there, though, they could have gone into the house with the arrest warrant. Sure. And, of course, had they arrested him in his home, the record would be different. We wouldn't have this question. Right. So – But he wouldn't have been – he wouldn't have been giving up his right, his Fourth Amendment right to be secured in his home. There would have been a warrant that would have authorized that entry. You're not contending that the second search required reasonable suspicion? Your Honor, we are contending it required reasonable suspicion, and we have not questioned whether there was reasonable suspicion. So you're conceding there was. We're conceding it. Oh, you're conceding. That there was reasonable suspicion, yes. Well, you're saying, as I understood it, that consent to search his person and property did not include his house. Your Honor, we are. In fact, we're raising multiple arguments about whether or not there was consent. Some cases say that it's not really consent if it's conditioned on your liberty or conditioned on not going to prison. In this case, this guy was going to be detained if he didn't agree to the pre-trial conditions. Well, it was a contract of adhesion, but it might have been a contract. And then we're also claiming that the words of the alleged consent were vague and ambiguous because it didn't talk about his residence. It didn't talk about his home. But why wouldn't an ordinary person think that he was consenting to the search of his house if he said, my person and property? Well, Your Honor, we looked at all the cases that use that language, and none of them really say that the word property equates to residence. Most of the cases are cases where they say, your person, home, and property, your vehicle, personal. The language usually used is to tell the defendant on notice that you're agreeing in order for you to have your liberty pending trial, you're agreeing to have your house searched, where you live searched. That's the most fundamental protection of the Fourth Amendment, and if a court's going to condition a person's release on that consent, we contend that the court should say explicitly, your house. They can search your house without your permission. And furthermore, there's a danger, if the language has any ambiguity, that a house search will be conducted and then later tried to be justified if they find something based on this ambiguous term. So what I'm asking this Court to say is that this isn't a convicted drug dealer who's on parole or on probation who has a lowered expectation of privacy like the cases that the government relies on, but this is a person who is presumed innocent, released pretrial, and if there's going to be a condition that his house can be searched without a warrant or without probable cause, that it must be explicit, that a search of his house cannot be justified based on an ambiguous term that doesn't mention his residence or his house, because the Fourth Amendment, it really talks about the house. Kennedy. If you win on this point, you don't have to worry about 924C then, do you? Well, Your Honor, we do, because this is count 5. This point relates just to the evidence on the count that the defendant was not convicted. 20 pounds of cannabis. It was not the defendant was not convicted on this count. And the government is arguing it's harmless error. It's not conceding that it's error, but is arguing it would be harmless if it was error because the evidence, the jury wasn't convinced to convict. We've argued that clearly the presence of drugs while on bail for a guy who's before the Court could have persuaded one juror and certainly persuaded all the jurors who voted guilty on count 5 in a hung jury, and therefore it couldn't be harmless. I'd like to reserve whatever additional time, but I'll answer any questions I can for you. Well, I'm still trying to figure out the taint with regard to counts 1 through 4, because don't we have a legal discovery of the 150 pounds of marijuana, the five loaded firearms, and cocaine? And, I mean, doesn't that overwhelmingly support his conviction on counts 1 through 4? Well, Your Honor, we obviously are relying heavily for our reversal on the counts other than the 924C on the Franks issue or the speedy trial issue. Okay. So the only way you went on that issue is if we agree with you on the Franks and the speedy trial issue. Well, no. We're arguing that the entire conviction should be reversed because some of the jurors believed the evidence in count 5 was sufficient to convict beyond a reasonable doubt on that count. And if a juror believes you're guilty as a drug dealer in count 5, that would influence their decision to convict on the other drug-dealing counts. Obviously, whether or not it was the deciding factor is difficult to tell. But we're dealing with a constitutional issue here, so it's really a matter of time to spend on it. They're told they're supposed to deliberate and treat each count separately, aren't they? Well, they are. But if that were the case, then you'd never have evidence on one count tainting the jury's determination on others, and frequently you do. All right. May I reserve a moment for rebuttal? Thank you. May it please the Court. Todd Tristan for the United States. Let me begin by addressing the first issue, and that is the sufficiency of the evidence of defendant's conviction on count 2 for possession of a firearm and furtherance of drug trafficking. The question and standard is, could a reasonable jury have found a nexus between the firearms and the drug trafficking to conclude that the firearms helped further promote it or advance the drug trafficking crime? And the answer to that is yes. And the Court can reach that answer by looking at the seminal case on this issue of United States v. Sabalas-Torres and its progeny, which lists a non-exclusive list of factors which address and distinguish between possession and furtherance of a crime from innocent possession of a firearm. Defense counsel's entire argument on this particular issue should be disregarded in that what it is asking this Court to do is to interpret this particular provision of 924C in a way that would render the other provisions worthless, and that the other provisions deal and address with use and carrying of a firearm during and in relation to a drug trafficking crime. That's not the facts in this case. That's not what the defendant is charged with. Alito, what was the jury instructed with regard to finding nexus? The jury was charged with addressing and looking at the evidence with respect to the testimony provided by the experts who did testify, a number of factors consistent. No, no, I'm sorry. Maybe I didn't make myself clear. How was the jury instructed on the in furtherance element? The specific instruction I don't have in terms of what the charging language was. But in essence, what the argument to the jury was, they could consider the factors that this Court should consider, and that is the accessibility of the firearm, the proximity of the firearm to the drugs, the – whether or not the firearms were loaded, whether or not the firearms were – the number of firearms. So in essence, what we're dealing with here is a situation not of a Wal-Mart antique or hunting rifle, not of – But you don't have the instruction. No, I do not have the exact instruction provided to the jury on this particular issue. Is it in the excerpts of record? It is not in the excerpts of record. And what I would ask this Court to take a look at – That's kind of critical, isn't it? Well, it certainly is extremely relevant in terms of how they were charged. But again, the evidence was overwhelming in terms of the facts available to them that they could look at, the quantity of drugs, the value of the drugs, and the relation of those drugs to the firearms in this case. Why didn't you put that in, in the record? Well, that was an issue of debate within our office. Initially, they were in – they were asked to be removed from the record as not necessary. Tell whoever made that determination that at least one judge thinks that was a bad call. Well, whoever made that determination, they're fired. Of course, but even with – A limitation problem? Perhaps, Your Honor. Not in the excerpt of record. But the main issue still remains. Counsel's entire argument suggests that this Court should have to find that the defendant had the firearm in his actual possession, that a drug could – That's superior court. They're in the district court file. Pardon me, Your Honor? The instructions are in the district court file. Correct, Your Honor. Correct. But the argument being made now before this Court is that this Court should require that the defendant have actually possessed the firearm or have been in the process of a drug trafficking offense. That is, in fact, not the case. And looking at the cases cited by the government in Sabalas-Torres in the Fifth Circuit, for instance, or in Mackey in the Sixth Circuit, mere presence – The instructions say, in furtherance of – The instructions did, in fact, state in furtherance of a drug trafficking crime. And – but notwithstanding those instructions and under any analysis, quite frankly, looking at the cited cases, which are virtually in universal agreement with respect to what is required to show in furtherance of, in Sabalas-Torres, the presence of a loaded handgun in the defendant's apartment with a substantial amount of drugs and money supported a finding that the handgun was used and possessed to protect the defendant's drugs against robbery. In Mackey, the evidence that an illegal short-barreled shotgun – We had – we had a case back there. I remember this. U.S. v. Guest, where I was on that panel with Judge Sneed, Judge Carter dissented, where – did you read that case? United States v. Guest? Yeah. G-U-E-S-S. No, Your Honor. I have done a comprehensive survey regarding cases on this issue. Well, you missed a good case. The U.S. v. Guest does not address the issue before the Court with respect to in furtherance of. No. It's before – it came out before that change, but – Prior to the Bailey fix, so to speak, 1998. Yeah. This is a – let's see when this thing was – well, anyway, it's before that. I think it was – no, this case was decided in 2000, 2000, February 2000. I'm not familiar with that case, Your Honor, but virtually every circuit that has addressed this issue. You got a pencil? I'll give you the size. Certainly, Your Honor. 203 Fed 3rd 1143. In that case, I just refreshed my memory last night. In that case, there was a – the defendant was on a balcony. He could see the police cars, you know, coming in the street and stopping in front of his place, and put a gun there in the balcony. And they came in with a warrant and searched the place, found the gun, and said, And I suppose, Your Honor, that was the case primarily decided on the evidence presented by the drug trafficking offense and what that nexus was, versus in a situation such as this, defense counsel suggests and for the first time raises terms such as this is a concept of a static offense or mere construction, which, again, is not the point of this particular provision. In furtherance must have some meaning. In that Sibaglio case in the Fifth Circuit, they talked about in furtherance wasn't satisfied by mere presence. And then they got him. They affirmed because he was carrying under the carrying part of the statute, not the mere conference. Correct, Your Honor. And there's no dispute that mere presence alone would not be sufficient. Well, what was going on that was affirmative or active in this situation? You have a room full of drugs and guns, but there's no nexus. Well, certainly. What makes that a crime? Right. I mean the in furtherance part, because there's no carrying. Correct. And there's no dispute as to whether or not drug trafficking or anything. Correct. What makes this in furtherance of is by examining the factors, such as the accessibility of the firearm. You had five firearms, three of which were loaded, strategically placed in dresser drawers, which were immediately viewable upon plain view holding. Well, that might have been to fend off burglars or something, mightn't it? Why is that in furtherance of the drug deal? Well, correct. But the issue is could the court, excuse me, could the jury have reasonably believed that they were possessed to protect the drugs? And a reasonable jury could have concluded that given their accessibility, the fact that they were loaded, the fact that there were multiple firearms, the nature of the firearms, they were selected to inflict maximum damage in close range, a short barrel shotgun, a .357 Magnum, and the testimony was they required minimal skill to use in the event of robbery and in close range and close quarters. But in addition to that, you have factors such as the possession status. Was it lawful or unlawful? In this case, it was unlawful to possess that short barrel shotgun. Short barrel shotgun was clearly unlawful. Correct. And the jury reasonably could have inferred that illegally possessed guns are possessed for illegal purposes. The jury could have furthered the issue. What if all these guns were in another part of the house? Well, in fact, there were other guns in the other part of the house. The testimony was that the defendant possessed a Mauser and a shotgun, which were kept in the living room and in his bedroom. And the jury could have inferred that those were strategically segregated. Those firearms consistent with drug trafficking were kept closest to the drugs, while those inconsistent with and further in self-protecting the drugs were kept elsewhere in the house. They also could have inferred that perhaps the reason why guns were placed throughout the house was overall protection against robbery of the valuables. It's certainly not implausible that, given that the drugs were valued at approximately half a million dollars, that the firearms could have been possessed to protect the valuables, including the drugs. Well, isn't that almost a per se rule, then? If you find a room with guns and drugs in the room, no activity going on, just a passive stash of guns and drugs, that it's the – that that's enough to let a jury find infringements? No. Alone, it would not be just a mere presence. But when you can look at the combination of factors that exist, that does provide circumstantial evidence from which a jury could find and could believe that there is some other purpose, and that is to protect the drugs. There's no question or dispute that drugs, and as this Court mentioned, drugs and firearms are, in fact, tools of the trade. It's not uncommon to find them together. Well, you had a witness that said that. That's correct. And so – So Judge Goodwin's right. Anytime you find a combination of drugs and guns, the guns are in furtherance. Well, not anytime, Your Honor, but – Give me an example of when you wouldn't have one. Two examples, Your Honor. One would be if it were an antique, a curio, a hunting rifle – Forget about it. Forget about it. Forget about it. Forget about it. If it would have been firearms that were unloaded and locked in a gun safe in the same room as drug trafficking, that would then –  Loaded firearms. Yeah. It would really come down – That's what people say. What's the point of having a gun if it isn't loaded? Okay. Well, you would, again, have to look at the factors enunciated in Cibales-Torres and how accessible is that firearm to the individual. What's the proximity of that firearm to the drugs, whether or not the firearm is, in fact, loaded, and the various other factors in terms of whether the gun is stolen, whether it's lawfully possessed. Well, that's – In this case – Yeah. In this case, under these facts and circumstances, a reasonable jury could have concluded and, in fact, other circuits have reached the same conclusion on facts similar to this, if not weaker, than the facts in this case. And those cases are cited throughout the government's brief, and those circuits range from the 1st, the 4th, the 5th, the 6th, the District of Columbia, the 10th, and the 11th Circuit. In fact, defense counsel, quite frankly, has not cited a single case which stands for the proposition that, under these facts, there must have been a drug-trafficking crime in the process, or the weapon must have been in his possession. Now, the other issue addressed and raised by this Court, if this Court has no further questions on that issue, is the legality of the January 30, 2002, search of the defendant's residence. And the question, the threshold question, really is, should this Court consider the propriety of a pretrial search where the evidence seized related to a count that was dismissed, that presents a novel constitutional issue, and even if that evidence were erroneously admitted under these facts, the error in admitting that evidence would have been harmless? And this Court has reached that issue on three circumstances, or three of them. Kennedy. Well, was that count dismissed? That count was, in fact, dismissed. After the hung jury? Correct. Correct. The jury was unable to reach a verdict after that particular count, and it was dismissed. Now, there is a case exactly on point on this issue, and that is United States v. Chase, addressed by this Court in 2003, as well as United States v. Marshall. And in those cases, the erroneous admission of evidence in violation of, such as in the Chase case, a psychotherapist's patient privilege was harmless error where the evidence was related only to a count on which the defendant was acquitted. And in United States v. Marshall, this Court reached the same issue and, furthermore, rejected the taint argument now being raised by defense counsel. And as this Court has pointed out, logic would suggest if you know what Judge Goodwin, not Judge Goodwin, Judge Noonan says about the harmless error rule, don't you? No, Your Honor. It's the last refuge of the scoundrel. Well, even if this Court does address this issue, the defense counsel still loses in that the rationale of United States v. Knights is equally applicable in this case. In other words, in Knights, the Court found that reasonable suspicion to believe that a probationer was engaged in criminal activity was sufficient to allow an intrusion on that probationer's significantly diminished expectation of privacy that is consistent with pretrial release individuals who are subject to restrictions, pretrial restrictions. But I don't think he's challenging the appellate's counsel is challenging the validity of that pretrial search. Correct. My only point was should this Court reach the merits, the government would still prevail under any analysis in this particular scenario. I know you always feel that way. Unless the Court has any further questions related to these particular issues, the government would submit. Thank you. Thank you. Two brief points. One, the appellate is not arguing that in order to show in further insult there must be an active drug deal in progress or that the gun must be physically possessed by the defendant. But the appellate is arguing that where neither are present, there must be some other evidence that the gun is possessed in further insult beyond what the – what I think the government's counsel here put it very aptly. It's plausible that it could have been. And if it's plausible that it could have been is equal to proof beyond a reasonable doubt, then I think this Court should write in a publishing opinion saying that, because that's not my understanding of the beyond a reasonable doubt standard is the possibility. But isn't the government saying, and don't our cases say, that it has to be something more than mere presence? Your Honor, I don't think it's – That something more can be illegal weapons like a sawed-off shotgun that don't have any legitimate uses except to further criminal – Drug deals. But, Your Honor, I question these – by the way, the out of this – I think it's the Sixth Circuit. The case the government's relying primarily on is not a Ninth Circuit authority. And there's a laundry list of factors which the government would have this Court write into law as what Congress meant in furtherance means. And I would ask permission to file a very brief, very quick supplemental brief in which I supply the jury instructions and address this question. We can get the jury instructions. Because I don't believe the jury was told that the mere presence of the gun is insufficient, nor was the jury instructed in the laundry list that the government is relying on. But my point is that if the government wants to rely on an out-of-circuit authority for analyzing the facts here, that would be – I think that reliance would be misplaced, because the case that they're relying on isn't even a case where the – Well, you told us there were two issues of first impression, and this is one of them, right? Right. So we're going to have to address – Yeah. I did, too, in my briefs. I analyzed the case extensively under their factors and argued that even there we should  But my point is just that, you know, those things are not written in stone, and the I mean, these are very big factors, as I pointed out in my brief. The other point that I wanted to just quickly make, so – What you're saying is those factors don't help us in a hard case like this. And I don't think those factors are a good blueprint for this Court to set out its interpretation of what that element of the new 924C possession and further instructions is. Do you have any factors or sort of a reformulation of the test that might help us? Your Honor, I think that – and I think it's in the brief that there must be evidence from which a jury could conclude that the guns actually helped or promoted the crime. And – Well, but that kind of begs the question. I mean, I think there's evidence here from which that could be done, but the question is what do we tell the jury in terms of how do you weigh that evidence in relation to the in furtherance requirement? Well, Your Honor, I agree. I have a problem with how to interpret in furtherance of without making the definition too inclusive. And the only reason I point out that this is a static crime and that it's constructive possession is that in that case, these factors – Well, I don't know that we've got to come up with, you know, 15 different factors, you know, in furtherance of. Right. Well, Your Honor, I think that there should be some evidence that the purpose for which the gun was possessed constructively was to promote the crime. And what we have here is a static crime. You know, most of these – the word drug trafficking, I think, is the – You keep using this – you keep using that phrase, static crime, but wouldn't it be sufficient if we simply told the jury you must find from the evidence that the possession of the guns promoted or facilitated the defendant's drug trafficking I don't know if facilitated would be strong enough to be possessed in furtherance of, but I think some language like that might be appropriate. But remember that the words of 924C are a drug trafficking crime. And the word trafficking is an active verb. Unfortunately, the crime, possession with intent to distribute, is a passive activity. It's not like – I'm not sure that I would necessarily agree. If you are on the way – if you're delivering drugs to a deal, even though at that time you're possessing it with intent to distribute, you're doing something  But if the drugs are in a bedroom, in a house, there's nothing active being done. The law is being violated. A crime is being committed, a serious one. And I'm not minimizing that, but I'm looking at the active nature of the offense when you're driving drugs to a drug deal. All right. The only other thing I wanted to say is I believe both – Chase and Marshall, if I'm saying them right, both of the cases that the government is relying on for its harmless error analysis are cases where the crime to which the question evidence related resulted in an acquittal. Where there was a hung jury, there were jurors who voted on the other counts who were convinced beyond a reasonable doubt that there was guilt on the fifth – on count five here. And therefore, those cases are distinguishable. Thank you. Thank you. Thank you. We'll take a short recess. Thank you. Thank you.
judges: Goodwin, Pregerson, Tallman